**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMEH SAMI S. KHOUZAM,** | : | |
| **Petitioner** | : | |
| **v.** | : | **3:CV-07-0992** |
| | : | **(JUDGE VANASKIE)** |
| **THOMAS H. HOGAN, ET AL.,** | : | |
| **Respondents** | : | |

**MEMORANDUM**

Sameh Sami S. Khouzam, an alien, has petitioned the Court for a writ of habeas corpus to set aside the Secretary of Homeland Security's decision to revoke his deferral of removal based on diplomatic assurances from the Government of Egypt that Khouzam would not be tortured if he were removed to Egypt.  Respondents, legal custodians of Khouzam, assert that the federal courts lack jurisdiction to consider Khouzam's claims; the petition presents non-justiciable political questions; and the petition fails to state a claim on which relief may be granted.  Contrary to Respondents' assertions, I find that Khouzam has presented justiciable issues falling within this Court's habeas corpus jurisdiction. I further find that the stay of removal, imposed temporarily by this Court's Orders of May 31 and June 6, 2007, shall remain in effect pending the conclusion of this case.

**I.  BACKGROUND**

Khouzam, a citizen of Egypt, arrived at New York's John F. Kennedy Airport on February 11, 1998.  While he was en route, the Department of State for the United States

cancelled Khouzam's visa based on information received by Egyptian authorities that he had allegedly committed a murder shortly before his departure from Egypt.  Khouzam was denied admittance upon his arrival because he lacked a valid immigration visa or entry document under section 212(a)(7)(A)(i) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1182(a)(7)(A)(i), and was detained.

Khouzam subsequently applied for asylum and withholding of removal under sections 208 and 241 of the INA, 8 U.S.C. §§ 1158, 1231, claiming he feared persecution as a Coptic Christian if he were returned to Egypt.  He also timely filed an application for relief under Article 3 of the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (the "CAT") based on a danger of being subjected to torture if he were sent back to Egypt.

An immigration judge in New York found that Khouzam was statutorily precluded from asylum and withholding of removal under sections 208(b)(2)(A)(iii) and 241(b)(3)(B)(iii) of the INA, 8 U.S.C. §§ 1158(b)(2)(A)(iii), 1231(b)(3)(B)(iii) because there were substantial grounds for believing that Khouzam had committed a serious nonpolitical crime outside the United States.  (Resp'ts' Resp. Ex. B (Dkt. Entry 9) at 000176.)  The immigration judge, however, after finding that "the evidence is overwhelming that [Khouzam] will more likely than not be subjected to torture by a responsible Egyptian government official," held that Khouzam was entitled to deferral of removal under the CAT.  (Id. at 000176, 000499.)

2

The Board of Immigration Appeals (the "Board") affirmed the immigration judge's denial of asylum and withholding of removal.  (Id. at 000124-000125.)  The Board, however, later reconsidered its decision and determined that CAT protection was not applicable to Khouzam because the threatened torture would be related to his prosecution for murder and would not have an illicit purpose. (Id. at 000080.)  Consequently, the Board ordered Khouzam removed from the United States.  (Id. at 000079-000080, 000004-000005.)

Khouzam timely appealed the Board's decisions to the United States Court of Appeals for the Second Circuit.[1]  The Court of Appeals denied Khouzam's petition for review insofar as it challenged the Board's asylum and withholding decision, finding that there were serious reasons to believe that Khouzam committed a crime.  Khouzam v. Ashcroft, 361 F.3d 161, 166 (2d Cir. 2004).  As to the denial of deferral of removal, however, the court found that the Board erred in deciding that torture related to a criminal prosecution is not protected under CAT.  Id. at 169-70.  The Court also concluded that "Khouzam will more likely than not be tortured if he is deported to Egypt."  Id. at 171.  Consequently, the Court vacated the Board's decision denying Khouzam relief under CAT.

_____

[1]  Under 8 U.S.C. § 1252(b)(2), a petition for review of orders of removal "shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."  Because the immigration judge was located in New York, the United States Court of Appeals for the Second Circuit was the proper venue for Khouzam's appeal of the Board's decision.

Id.  On remand, the Board ordered that Khouzam's removal to Egypt be deferred.[2]

Khouzam remained in the custody of the United States Immigration and Customs Enforcement (the "ICE") in New Jersey until February of 2006, when a New Jersey federal court granted his habeas petition for release.  (Pet'r's Pet. Ex. 2 (Dkt. Entry 1).)  Khouzam thereafter resided in Pennsylvania.  As a condition of his release, Khouzam was required to report monthly to the ICE office located at the York County Prison.  (Id.)

While reporting for a regular check-in with ICE on May 29, 2007, Khouzam was detained by ICE authorities and informed that his deferral of removal under CAT had been terminated four months earlier based on diplomatic assurances from the Government of Egypt that he would not be tortured.[3]  (Resp'ts' Resp. Ex. F.)  Khouzam was eligible for removal to Egypt as early as June 1, 2007.  (Id.)

---

[2] In its initial decision affirming deferral of removal, the Board observed that "the Secretary of State may seek diplomatic assurance from the Egyptian government that the respondent would not be tortured if he is returned there and then in consultation with the Attorney General determine whether such assurances are sufficiently reliable to terminate deferral of removal and allow the respondent's removal consistent with Article 3 of the Convention Against Torture. 8 C.F.R. § 208.18(c); 208.17(f)."  (Resp'ts' Resp. Ex. B (Dkt. Entry 9) at 000452.)  This caveat was not repeated when the deferral of removal was reinstated.

[3] Though the decision to terminate Mr. Khouzam's deferral of removal appears to have been reached by January 24, 2007, Respondents claim that they did not inform Mr. Khouzam of the decision until May 29, 2007 (two days before he could be removed) because they needed time to secure travel documents from the Egyptian government. Tammy Cyr-Talbott, Unit Chief of the ICE Travel Document Unit, declared that she received travel documents from the Egyptian government on May 15, 2007.  (Resp'ts' Resp. Ex. F (Dkt. Entry 9).)

In a letter stamped and delivered May 29, 2007, Assistant Secretary of ICE, Julie L.

Myers, informed Khouzam's counsel:

> Consistent with the procedures set forth at 8 C.F.R. §§
> 1208.18(c) and 208.18(c), I have credited as sufficiently reliable
> the diplomatic assurances received by the Department of State
> from the Government of Egypt that your client, Mr. Khouzam,
> would not be tortured if removed there.  The Secretary of
> Homeland Security has, therefore, in accordance with 8 C.F.R.
> §§ 1028.17(f) and 208.17(f), terminated Mr. Khouzam's deferral
> of removal to Egypt, effective January 24, 2007.  The
> Department of Homeland Security will not remove Mr.
> Khouzam to Egypt prior to June 1, 2007.

(Resp'ts' Resp. Ex. G (Dkt. Entry 9).)

In an undated "Memorandum to File," Assistant Secretary Myers recorded the

following details regarding the decision to terminate Mr. Khouzam's deferral of removal:

> The Department of State obtained, and forwarded to the
> Deputy Secretary of Homeland Security, diplomatic assurances
> from the government of Egypt that Mr. Khouzam would not be
> tortured if removed there.  After consulting with the Department
> of State and taking into account all relevant considerations,
> including human rights practices in Egypt, I determined,
> consistent with the procedures set forth at 8 C.F.R. §§
> 1208.18(c) and 208.18(c), that the assurances were sufficiently
> reliable to allow for Mr. Khouzam's removal to Egypt, consistent
> with U.S. obligations under Article 3 of the Convention Against
> Torture.
>
> Having credited the diplomatic assurances received from
> Egypt, I recommended to the Secretary of Homeland Security
> that he terminate Mr. Khouzam's deferral of removal.  After
> review of my decision to credit the diplomatic assurances and
> my recommendation to terminate deferral of removal, the

> Secretary of Homeland Security approved the
> recommendation, thereby terminating, in accordance with §§
> 1208.17(f) and 208.17(f), Mr. Khouzam's deferral of removal to
> Egypt, effective January 24, 2007.

(Resp'ts' Resp. Ex. G (Dkt. Entry 9).)

Respondents have also submitted a declaration by James F. Jeffrey, Principal

Assistant Secretary of State for the Bureau of Near Eastern Affairs, explaining the State

Department's role in obtaining assurances from the Egyptian government that Khouzam

would not be tortured if he is removed to Egypt.  (Resp'ts' Resp. Ex. H (Dkt. Entry 9).)

According to Jeffrey:

> [T]he Government of Egypt provided formal written assurances
> that Mr. Khouzam will not be tortured if he is removed to Egypt.
>
> After careful review by the relevant State Department bureaus,
> including experts in the fields of Egyptian relations, human
> rights, and international law, the Department determined and
> formally conveyed its view to the Department of Homeland
> Security that the assurances received from the Government of
> Egypt regarding the treatment of Mr. Khouzam were of
> sufficient reliability to enable the Secretary of Homeland
> Security to conclude that Mr. Khouzam could be removed to
> Egypt without running afoul of U.S. treaty obligations.

(Id.)  Jeffrey also expressed concern that judicial review of the Executive branch's decision

to credit assurances of foreign governments could undermine foreign relations and hinder

the Department of State's ability to press other countries to comply with diplomatic requests.

On May 30, 2007, Khouzam filed an emergency motion for stay of removal with the

United States Court of Appeals for the Second Circuit, <u>Khouzam v. Ashcroft</u>, No. 02-4109

(2d Cir. filed May 30, 2007), and an "Emergency Petition for a Writ of Habeas Corpus,

Declaratory Judgment, Writ of Mandamus, and for Stay of Removal" with this Court (Dkt.

Entry 1).  On May 31, 2007, after conducting a telephonic conference with counsel for both

parties, this Court stayed Khouzam's removal until June 7, 2007.  (Dkt. Entry 7.)  On June

4, 2007, the United States Court of Appeals denied Khouzam's motion for a stay of removal

as moot.  <u>Khouzam v. Ashcroft</u>, No. 02-4109 (2d Cir. filed June 4, 2007).  This Court

subsequently extended the stay of Khouzam's removal through June 18, 2007, to provide

Petitioner an opportunity to reply to Respondents' comprehensive brief and to afford the

Court adequate time to consider the substantial issues presented in this matter.  (Dkt. Entry

19.)

## II.  DISCUSSION

### A.  Whether the Court Lacks Jurisdiction to Review Khouzam's Petition

Khouzam has filed this habeas petition claiming that his return to Egypt "pursuant to

inherently unreliable diplomatic assurances from Egypt without any opportunity to challenge

the reliability of such assurances violates the [CAT] . . ., applicable regulations, and the Fifth

Amendment's Due Process Clause."  (Pet'r's Reply Br. (Dkt. Entry 27) at 1.)  A threshold

issue in this matter is whether the Court has jurisdiction to hear Khouzam's petition.

The Court is statutorily empowered to grant a writ of habeas corpus where a person

is held in custody "in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3).  Historically, an alien typically tested the legality of his or her

deportation by bringing a habeas corpus action in district court.  See I.N.S. v. St. Cyr, 533

U.S. 289, 305-306 (2001).  Since the enactment of the 1952 Immigration and Nationality

Act, Congress has made various alterations to the procedures for judicial review of orders of

deportation.  Id. at 305-314 (reviewing the history of judicial review of deportation orders).

Respondents, citing Soliman v. U.S. ex rel. INS, 296 F.3d 1237, 1241-42, n.1 (11th

Cir. 2002), contend that, under the Foreign Affairs Reform and Restructuring Act of 1998

(the "FARRA"), Pub. L. No. 105-277, Div. G., Title XXII, § 2242, 112 Stat. 2681, 2681-822,

codified as a Note to 8 U.S.C. § 1231, Congress provided that CAT claims may be

addressed judicially only in connection with the review of a final order of removal.[4]  Because

Khouzam is not seeking review of a final order of removal, Respondents argue that this

Court lacks the authority to entertain his claims.

Our Court of Appeals, however, has held that FARRA, by itself, does not foreclose

---

[4] In pertinent part, Section 2242(d) of FARRA provides:

d) Notwithstanding any other provision of law . . . nothing in this section shall
be construed as providing any court jurisdiction to consider or review claims
raised under the Convention [against Torture] or this section, or any other
determination made with respect to the application of the policy set forth in
subsection (a), except as part of the review of a final order of removal
pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C.
1252)

habeas review of CAT-related claims.  See Ogbudimkpa v. Ashcroft, 342 F.3d 207, 217-220

(3d Cir. 2003).  Relying upon St. Cyr, the Third Circuit stated, "because § 2242(d) of

FARRA fails to state explicitly that a district court may not exercise jurisdiction over habeas

corpus claims or mention 28 U.S.C. § 2241, the District Court retains that jurisdiction."  The

court elaborated:

> [T]he proper starting point is the question whether FARRA deprives the
> District Court of habeas jurisdiction, not whether it grants it. Habeas relief is
> available for an individual who claims his or her continued detention violates a
> statute or a treaty. 28 U.S.C. § 2241(c)(3). CAT has been implemented by
> FARRA and its accompanying regulations. FARRA makes it federal law that
> no one shall be removed "to a country in which there are substantial grounds
> for believing the person would be in danger of being subjected to torture."
> FARRA, § 2242(a). It follows that those individuals whose detention violates
> FARRA may challenge their detention under 28 U.S.C. § 2241, just as with
> any other detentions that violate federal law.

Id. at 219-220.

Respondents, however, maintain that jurisdiction-stripping provisions of the REAL ID

Act of 2005, coupled with FARRA § 2242(d), prevent CAT-related claims from being

adjudicated in a district court.  In 2005, Congress amended section 242 of the INA, 8 U.S.C.

§ 1252 with the enactment of the REAL ID Act of 2005.  See Toussaint v. Attorney General

of U.S., 455 F.3d 409, 412 n.3 (3d Cir. 2006).  In enacting the REAL ID Act of 2005,

Congress intended to limit judicial review of a final order of removal to petitions for review

filed in the appropriate court of appeals.  Jordon v. Attorney General of U.S., 424 F.3d 320,

326-28 (3d Cir. 2005).  In addition, Congress added the following provision with regards to

CAT claims:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, *a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the [CAT]*.

8 U.S.C. § 1252(a)(4) (emphasis added).  Respondents assert that FARRA and the REAL ID Act thus combine to bar CAT-related claims outside the direct review of a final order of removal.

The difficulty with Respondents' position is that it would eliminate judicial review where, as here, the CAT-related claim does not arise in the context of the ordinary removal process.  In a typical removal action, an immigration judge enters an order of removal at the conclusion of proceedings under section 240 of the INA, 8 U.S.C.A. § 1229a.  After the immigration judge's decision becomes a final order of removal under 8 C.F.R. § 1241.1, an alien must file a petition for review within thirty days, 8 U.S.C. § 1252(b), with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings, § 1252(c).  Any claim based upon CAT raised in this context is thus assured of judicial review.

Indeed, these procedures were followed when Khouzam initially sought review in the Court of Appeals for the Second Circuit of the May 7, 2002, order of removal.  Because the Secretary of Homeland Security has terminated Khouzam's deferral of removal under 8

C.F.R. §§ 1208.17(f) and 208.17(f),[5] without reopening removal procedures before an

immigration judge or the Board, there does not exist a final order of removal under 8 C.F.R.

§ 1241.1 for timely review under 8 U.S.C. § 1252(b)(1).

 Respondents' position implicates the Suspension Clause concerns that run through

the Supreme Court's decision in St. Cyr.  Indeed, the Supreme Court has observed that the

---

 [5] Sections 1208.17(f) and 208.17(f) authorize termination of deferral of removal
pursuant to sections 1208.18(c) and 208.18(c), respectively.  These regulations both state:

> Diplomatic assurances against torture obtained by the
> Secretary of State.
>
> (1) The Secretary of State may forward to the Attorney General
> assurances that the Secretary has obtained from the
> government of a specific country that an alien would not be
> tortured there if the alien were removed to that country.
>
> (2) If the Secretary of State forwards assurances described in
> paragraph (c)(1) of this section to the Attorney General for
> consideration by the Attorney General or her delegates under
> this paragraph, the Attorney General shall determine, in
> consultation with the Secretary of State, whether the
> assurances are sufficiently reliable to allow the alien's removal
> to that country consistent with Article 3 of the Convention
> Against Torture. The Attorney General's authority under this
> paragraph may be exercised by the Deputy Attorney General or
> by the Commissioner, Immigration and Naturalization Service,
> but may not be further delegated.
>
> (3) Once assurances are provided under paragraph (c)(2) of
> this section, the alien's claim for protection under the
> Convention Against Torture shall not be considered further by
> an immigration judge, the Board of Immigration Appeals, or an
> asylum officer.

Suspension Clause requires "some 'judicial intervention in deportation cases.'" St. Cyr, 533 U.S. at 300 (quoting Heikkila v. Barber, 345 U.S. 229, 235 (1953)); see also Swain v. Pressley, 430 U.S. 372, 381 (1977) (Congress may replace habeas corpus only with an "adequate and effective" alternative).

The Conference Report for the REAL ID Act makes clear that Congress was aware of these issues and did not intend to preclude all judicial review of an alien's removal:

> Thus, the overall effect of the proposed reforms is to give every alien a fair opportunity to obtain judicial review while restoring order and common sense to the judicial review process. Significantly, this section does not eliminate judicial review, but simply restores such review to its former settled forum prior to 1996. Under section 106 [of the REAL ID Act], all aliens who are ordered removed by an immigration judge will be able to appeal to the [Board] and then raise constitutional and legal challenges in the courts of appeals. No alien, not even criminal aliens, will be deprived of judicial review of such claims.  Unlike [the Antiterrorism and Effective Death Penalty Act of 1996] and [the Illegal Immigration Reform and Immigrant Responsibility Act of 1996], which attempted to eliminate judicial review of criminal aliens' removal orders, section 106 would give every alien one day in the court of appeals, satisfying constitutional concerns.
>
> * * *
>
> [S]ection 106 would not preclude habeas review over challenges to detention that are independent of challenges to removal orders. *Instead, the bill would eliminate habeas review only over challenges to removal orders.*

H.R. Rep. No. 109-72, 109th Cong., at 174-175 (2005) (emphasis added).  It is also worth noting that the Conference Notes indicate that 8 U.S.C. § 242(a)(4) was added *to allow* aliens in removal proceedings to obtain review of CAT claims.  Id. at 176.

Respondents' construction of the REAL ID Act to bar any judicial review of the Secretary of Homeland Security's decision to terminate an alien's deferral of removal raises substantial constitutional questions.  The Court should attempt to construe the Act to avoid such problems if an alternative interpretation of the statute is "fairly possible."  St. Cyr, 533 U.S. at 299-300.  One such interpretation that seems consistent with congressional intent expressed in the Conference Report is that the REAL ID Act only eliminated habeas review over challenges *to removal orders*, but did not eliminate habeas review for challenges to the Secretary of Homeland Security's decision to terminate a deferral of removal.[6]  See Nnadika v. Attorney General of U.S., 484 F.3d 626, 630-32 (3d Cir. 2007) (distinguishing challenges to a final order of removal from challenges that are independent of challenges to removal orders under an analogous provision of the REAL ID Act); Kumarasamy v. Attorney General of U.S., 453 F.3d 169, 172 (3d Cir. 2006) (finding that, under the REAL ID Act, the court of appeals has "jurisdiction only in those cases in which the petitioner seeks review of a final order of removal"); cf. Gerald L. Neuman, On the Adequacy of Direct Review After the REAL ID Act of 2005, 51 N.Y.L. Sch. L. Rev. 133, 152 (2006) (suggesting district courts

---

[6]  Certainly, there are other ways that the REAL ID Act may be construed to avoid the serious constitutional problems discussed above.  A Court of Appeals could, for instance, interpret the Secretary of Homeland Security's decision to credit diplomatic assurances as a final order of removal.  See Gerald L. Neuman, On the Adequacy of Direct Review After the REAL ID Act of 2005, 51 N.Y.L. Sch. L. Rev. 133, 151 (2006).  Notably, Respondents do not concede that a court of appeals would have jurisdiction to consider the effect of an administrative decision to credit diplomatic assurances.

maintain habeas corpus jurisdiction over post-removal order administrative acts).  Rather

than "lightly assume that Congress intended to infringe constitutionally protected liberties or

usurp power constitutionally forbidden it," Edward J. DeBartolo Corp. v. Florida Gulf Coast

Bldg. and Const. Trades, 485 U.S. 568, 575 (1988), the Court will interpret the REAL ID Act

as not precluding habeas review of the Secretary of Homeland Security's decision to

terminate Khouzam's deferral of removal.

Respondents also argue that the Court lacks jurisdiction to review the Secretary of

Homeland Security's decision under section 242(g) of the INA, 8 U.S.C. § 1252(g).  Section

242(g) of the INA bars courts from hearing "any cause or claim by or on behalf of any alien

arising from the decision or action by the Attorney General to commence proceedings,

adjudicate cases, or execute removal orders against any alien under this chapter."  In Reno

v. American-Arab Anti-Discrimination Committee, the Supreme Court clarified that section

242(g) only applies to challenges complaining of selective enforcement of the immigration

laws.  525 U.S. 471, 483-87 (1999).  "Because § 242(g) only applies to suits challenging the

government's selective enforcement of the immigration laws, and because [Khouzam's]

case was not brought on this ground, § 242(g) does not bar his suit."  DeSousa v. Reno,

190 F.3d 175, 182-83 (3d Cir. 1999).

Moreover, Petitioner also challenges whether the government properly complied with

the regulations for crediting diplomatic assurances as it does not appear that the Secretary

of State was consulted, as apparently required by the regulations.  (Pet'r's Reply (Dkt. Entry

27) at 47 n.16.)  Certainly, the Secretary of Homeland Security does not have discretion to

act outside federal regulations.  Thus, section 242(g) does not bar Khouzam's petition.

### B.  Whether the Petition Presents a Non-Justiciable Political Question

Respondents contend that, even if jurisdiction exists, Khouzam's petition presents a

political question that is nonetheless nonjusticiable.  (Resp'ts' Resp. (Dkt. Entry 9) at 24-31.)

The Supreme Court has said that the "political question doctrine excludes from judicial

review those controversies which revolve around policy choices and value determinations

constitutionally committed for resolution to the halls of Congress or the confines of the

Executive Branch."  Japan Whaling Ass'n v. American Cetacean Soc., 478 U.S. 221, 230

(1986).  Courts must respect the separation of powers among the branches of government

and refrain from resolving questions which lack "judicially discoverable and manageable

standards for resolving it."  Baker v. Carr, 369 U.S. 186, 217 (1962).

In analyzing whether Khouzam's petition is justiciable, it is useful to clarify the claims

he has presented.  Primarily, Khouzam presents a procedural due process argument that

he must be provided an opportunity to challenge the reliability of assurances from the

Egyptian government that he would not be subjected to torture if removed to Egypt.  (Pet'r's

Reply (Dkt. Entry 27) at 47, 56.)  Additionally, he presents a substantive due process

argument that his removal to Egypt would violate the CAT given the inherent unreliability of

the Egyptian government's assurances.  (Id. at 46-47, 56 n.21.)  He also argues that his

removal violates the CAT as implemented by FARRA.  (Id. at 24-48.)  Lastly, Khouzam

15

argues that the Secretary of Homeland Security was without authority to terminate his deferral of removal pursuant to 8 C.F.R. § 1208.17(f) without consulting the Secretary of State under 8 C.F.R. § 1208.18(c)(2).[7]  (Id. at 47 n.16.)

It is obvious that Khouzam's challenge based on the Secretary of Homeland Security's failure to comply with federal regulations does not touch upon political question concerns.  If the Secretary failed to comply with the regulations, he would be contravening the policy choice of requiring consultation with the Secretary of State.  Additionally, there are manageable standards for resolving whether Respondents complied with the regulations.  Thus, the Court will not refrain from considering whether Respondents complied with the regulations.

Whether Respondents' actions violated our government's treaty requirements is also a justiciable issue.  While the executive and the Senate are authorized to make treaties under Article II, Section 2, Clause 2 of the Constitution, review of government compliance with treaty obligations is a question for the courts.  See Japan Whaling, 478 U.S. at 230

---

[7]  Respondents have only stated that they consulted with the Department of State and experts in the Department.  They have not presented any evidence, or claimed, that Assistant Secretary Myers' determination that the Egyptian government's assurances were sufficiently reliable was made in consultation with the Secretary of State, as required by 8 C.F.R. § 1208.18(c)(2).  While decisions by heads of government agencies may be worthy of deference, the Court is weary of extending this deference to all ranks of public servants. In this regard, the regulations themselves provide for only a limited delegation of authority within the Department of Homeland Security, and make no reference to delegation by the Secretary of State with respect to her duties.

("the courts have the authority to construe treaties and executive agreements").

Khouzam's procedural and substantive due process claims present more troubling questions.  Court review of the executive's foreign policy choices raises substantial separation of powers concerns.  United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 319-320 (1936) (observing that the Constitution vests the executive branch with the power to determine foreign policy); but see Japan Whaling Ass'n, 478 U.S. at 229-30 ("[I]t is error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance.")  Furthermore, there may not be manageable standards for reviewing the executive's determination that the Egyptian government's assurances were sufficiently reliable, Baker, 369 U.S. at 217; see also Japan Whaling Ass'n, 478 U.S. at 230 (noting "courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature"), given the executive branch's unusual position to garner information about foreign countries and to assess the credibility of foreign diplomats.

These concerns, however, are moderated by the limited power vested in courts exercising habeas corpus jurisdiction.  Courts cannot "review factual determinations made by the Executive."  St. Cyr, 533 U.S. at 306.  Courts, however, routinely assess the adequacy of process provided and the Executive branch's adherence to normative standards.

Also militating in favor of judicial review is the importance of the individual interests at stake here.  The prohibition against torture is a firmly established rule of customary

17

international law.  As explained in Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 717 (9th Cir. 1992):

> [T]he right to be free from official torture is fundamental and universal, a right deserving of the highest status under international law, a norm of *jus cogens*. The crack of the whip, the clamp of the thumb screw, the crush of the iron maiden, and, in these more efficient modern times, the shock of the electric cattle prod are forms of torture that the international order will not tolerate. To subject a person to such horrors is to commit one of the most egregious violations of the personal security and dignity of a human being. That states engage in official torture cannot be doubted, but all states believe it is wrong, all that engage in torture deny it, and no state claims a sovereign right to torture its own citizens. Under international law, any state that engages in official torture violates *jus cogens*.

Our Nation, by ratifying the CAT, made it our policy not to return any person to a country in which there was substantial grounds for believing that the person would be tortured.  See FARRA § 2242(a).  The CAT is an international instrument intended to foster the values of a democratic society.  An essential attribute of any democratic society is the availability of due process safeguards when substantial interests, such as the interests in bodily integrity and human dignity protected by the CAT, are in jeopardy.  While Egypt has a substantial interest in seeing that its criminal laws are enforced, this case does not present issues of national security or compelling foreign policy interests sufficient to counsel against adjudication of Petitioner's claims.

Given the early stages of this case and the need for the Court to act promptly on the challenge to its jurisdiction and the continuation of the stay of removal, there is no need to determine now the parameters of judicial review of any due process claim.  It is sufficient to

find at this stage that the right of non-return conferred by the CAT may not be abridged arbitrarily.  Because the government has not provided Khouzam with an opportunity to challenge the reliability of the diplomatic assurances and has not presented any evidence to support its decision, the Court will not reject the due process claims as barred by the political question doctrine.

### C.  Whether the Petition States a Claim on Which Relief May be Granted

Respondents, pointing to Khouzam's status as an inadmissible alien, argue that he can present no viable claim here because he has no constitutionally protected rights.  Respondents' argument ignores the import of our Nation's treaty obligations, as well as the fact that rights established by our treaties are enforceable in a habeas proceeding.  See Ogbudimkpa, 342 F.3d at 220.  Khouzam has presented a claim that his removal will violate the CAT.  In this regard, no showing has been made by Respondents that removal based upon diplomatic assurances by a country known to have engaged in torture is consistent with the CAT.  Moreover, contrary to Respondents' assertions, Khouzam is indeed making a claim that the pertinent regulations were violated, a claim that is also cognizable in a habeas proceeding.  See Auguste v. Ridge, 395 F.3d 123, 153 (3d Cir. 2005) (reviewing on habeas corpus petition the application of regulations implementing CAT).  Finally, as noted above, the CAT confers rights that are protected by the due process clause, and those rights exist regardless of the "immigration status" of the petitioner.  See FARRA § 2242(a) (extending CAT protection to "any person").  The protection against torture on which the principle of

non-return rests is a fundamental right that is important to the rule of law and essential to a democratic society.  Accordingly, Respondents' request that this matter be dismissed for want of a cognizable claim for relief will be denied.

### D.  Stay of Removal

The familiar four factors that inform the analysis of a preliminary injunction motion also apply to a request to stay removal pendente lite.  Douglas v. Ashcroft, 374 F.3d 230, 233 (3d Cir. 2004).  Those factors are (1) a likelihood of success on the merits, (2) irreparable harm if the stay is not granted, (3) potential harm to the moving party outweighs the harm to the opposing party, and (4) a stay would serve the public interest.  Id.  Each of the factors must be assessed carefully, and a stay may be ordered even where the likelihood of prevailing is not compelling if the other considerations weigh heavily in the moving party's favor.  See Marxe v. Jackson, 833 F.2d 1121, 1127-28 (3d Cir.1987) (strength of showing of irreparable harm may warrant preliminary injunction although likelihood of ultimately prevailing is not compelling); Constructors Association of Western Pa. v. Kreps, 573 F.2d 811, 815 (3d Cir.1978) (where strong showing of irreparable harm is made, preliminary injunction might be appropriate "'even though plaintiffs did not demonstrate as strong a likelihood of ultimate success as would generally be required'").

The pleadings presented thus far in this case disclose substantial questions concerning violations of CAT, the implementing regulations, and due process.  While no definitive judgment can be made as to the likelihood of prevailing, it suffices at this stage to

note that the issues are certainly not frivolous.  Moreover, a compelling showing of irreparable harm has been made.  The record reveals a probability of torture upon Khouzam's return to Egypt.  The Court of Appeals for the Second Circuit found it more likely than not that Khouzam will be tortured, and the record before this Court does not show otherwise.  The harm to Khouzam clearly outweighs any damage to our government by a delay in effecting his removal while the important issues he has presented are adjudicated.  In this regard, the suggestion that delay will adversely affect diplomatic relationships is belied by the four-month delay between the time that the assurances of non-torture were found reliable and the issuance of a travel document by the Government of Egypt.  And while Egypt's interests are undoubtedly adversely affected, the delay occasioned by this Court's consideration of the merits of Petitioner's claims must be assessed in the context of the facts of this case, which show that diplomatic assurances were not provided for several years after a determination of a probability of torture was made by an appellate court.  Finally, the public interest will be advanced by granting a stay.  As noted above, protection against torture is an essential component of the rule of law and a democratic society.  While Khouzam may have no right to be in the United States, he most assuredly has a right not to be tortured.  Granting a stay of removal to assure proper observance of the applicable law serves the public interest.

An appropriate Order follows.

21

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMEH SAMI S. KHOUZAM,** | : | |
| **Petitioner** | : | |
| **v.** | : | **3:CV-07-0992** |
| | : | **(JUDGE VANASKIE)** |
| **THOMAS H. HOGAN, ET AL.,** | : | |
| **Respondents** | : | |

## ORDER

**NOW, THIS 15th DAY OF JUNE, 2007,** for the reasons set forth in the foregoing

Memorandum, **IT IS HEREBY ORDERED THAT:**

1.  Respondents' request to dismiss the habeas corpus petition filed in this matter is

**DENIED**.

2.  Petitioner is granted a stay of removal pending the outcome of this proceeding.

3.  A telephonic scheduling conference will be conducted on June 25, 2007, at 1:00

p.m.  Counsel for Petitioner is responsible for placing the call to 570-207-5720, and all

parties shall be ready to proceed before the undersigned is contacted.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge